IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 17 2017

CLERK, U.S. DISTRICT COURT
By_____
                              Deputy

JERRY DEAN BILLINGTON JR.,                §
                                          §
                Petitioner,               §
                                          §
v.                                        §        No. 4:15-CV-748-A
                                          §
LORIE DAVIS, Director,[1]                 §
Texas Department of Criminal              §
Justice, Correctional                     §
Institutions Division,                    §
                                          §
                Respondent.               §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 filed by petitioner, Jerry Dean Billington Jr.,

a state prisoner incarcerated in the Correctional Institutions

Division of the Texas Department of Criminal Justice (TDCJ),

against Lorie Davis, Director of TDCJ, respondent. After having

considered the pleadings, state court records, and relief sought

by petitioner, the court has concluded that the petition should

be denied.

### I. Procedural History

In February 2011 petitioner was charged by indictment in

_____

[1]Effective May 4, 2016, Lorie Davis replaced William Stephens as
director of the Correctional Institutions Division of the Texas Department of
Criminal Justice. Pursuant to Federal Rule of Civil Procedure 25(d), Davis is
automatically substituted as the party of record.

Tarrant County, Texas, Case No. 1222427D, with felony driving while intoxicated (DWI). (Clerk's R. 2, ECF No. 20-4.) The indictment also included a habitual-offender notice alleging two prior sequential felony DWI convictions. (*Id.*) Petitioner's jury trial commenced on March 6, 2012, at the conclusion of which the jury found petitioner guilty as charged and true to the habitual-offender notice and assessed his punishment at 35 years' imprisonment. (*Id.* at 47.) The Eighth District Court of Appeals of Texas affirmed the trial court's judgment. (Op. 8, ECF No. 20-1.) Petitioner also filed a state postconviction habeas application challenging his conviction, which was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court. (State Habeas R. 2-18, ECF No. 20-10 & Action Taken, ECF No. 20-9.)

The state appellate court summarized the background facts of the case as follows:

> On December 1, 2010, Police Officer Richard Lukowsky of the Azle Police Department was driving on Boyd Road in Tarrant County, Texas when he pulled behind a white pickup truck. When Officer Lukowsky ran the truck's license plate he learned the registration was expired. Officer Lukowsky followed the vehicle and saw the driver commit a traffic violation. He then pulled the vehicle over and made contact with the driver.
>
> Officer Lukowsky described Appellant as having bloodshot and watery eyes. He also smelled a moderate

2

odor of alcohol on Appellant's breath. Appellant stated that he was going to a bar, that he had consumed a six-pack of beer after work, and that he had purchased beer on his way to the bar. Officer Lukowsky administered field sobriety tests on Appellant.

Appellant failed the horizontal gaze nystagmus test and refused to perform the walk-and-turn and the one-leg stand tests. Appellant was also asked to perform an alphabet test and counting test. Appellant failed both tests and was subsequently arrested. A mandatory blood draw showed Appellant had a blood alcohol concentration of 0.14 which was over the legal limit of 0.08.

(Op. at 1-2, ECF No. 20-1.)

The defensive theory at trial was to discredit the officers' testimony by suggesting that Officer Lukowsky's traffic stop was illegal; that the officer's roadside field sobriety tests were incomplete and/or inadequate; that the officer's testimony that petitioner had lost the normal use of his mental or physical faculties was inconsistent with the videotape of the stop; and that there was an inadequate chain of custody and possible contamination of petitioner's blood samples.

## II. Issues

In one ground for relief, petitioner merely asserts that he received ineffective assistance of trial counsel because counsel failed to present a defense and petitioner's version of the facts to the jury. (Pet. 6, ECF No. 2.)                                    1

3

### III. Rule 5 Statement

Respondent believes that petitioner has sufficiently exhausted his state court remedies as to the claim raised and that the petition is not time-barred or subject to the successive-petition bar. (Resp't's Answer 4, ECF No. at 21.) 28 U.S.C. § 2244(b), (d).

### IV. Discussion

#### *Legal Standard for Granting Habeas Corpus Relief*

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established Supreme Court precedent or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1)

4

provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Further, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law, as determined by the Supreme Court of the United States" unless there is evidence that an incorrect standard was applied, in making its decision. *Johnson v. Williams*, — U.S. —, 133 S. Ct. 1088, 1094 (2013); *Harrington*, 562 U.S. at 99; *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2004).

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and

(2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

The Supreme Court recently emphasized in *Harrington v. Richter* the manner in which a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams,* 529 U.S. at 410). Accordingly, it is necessary only to determine whether the state courts'

6

rejection of petitioner's ineffective assistance claim was contrary to or an objectively unreasonable application of *Strickland*. *Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

In his state habeas application, petitioner raised the following ineffective assistance claim (all spelling, grammatical and punctuation errors are in the original):

> The applicant claims ineffective assistance of counsel which includes the applicants right to present a defense and his version of the facts as well. The trial counsel did not make an effort to present the applicants case to the jury through the cross examination of the states witnesses and did not make an effort to investigate leads (including the blood test) that should have turned up evidence and found witnesses for the applicants defense. In a memorandum of law the applicant has provided, the applicant will show that the arresting officers testimony at trial conflict with audio-video footage taken from the policemans in-car camera. In the memorandum of law, the applicant will show that because of the trial counsels effortless performance the jury was only presented with the states version of what happened which prejudiced the outcome of the trial and the applicants claim of innocence.

(State Habeas R. 7-8, ECF No. 20-10.)

Counsel, Gregory Gray, responded to petitioner's allegations, via affidavit, as follows (all spelling, punctuation and/or grammatical errors are in the original):

> In preparing for trial, defense counsel reviewed all

7

written police reports, videos, and blood test taken concerning this matter. A careful review of the procedures taken by the arresting agency showed all requirements specified to take a blood sample were followed in this case. In addition, investigation into the qualifications and procedures used by the Tarrant County Medical Examiner's Toxicology Laboratory in testing the blood sample did not reveal any beneficial information for the Applicant.

Based on our investigation and the video evidence that would be presented during trial, defense strategy was to attempt to show that the Applicant's interaction with the police officer at the scene and at the station were not consistent with a person with a blood alcohol level of almost twice the legal limit. This strategy was discussed and approved by the Applicant.

Applicant was arrested after a routine traffic stop for expired registration. Although the defense initially believed the arrest was the result of an illegal stop, investigation into case law revealed the probable cause for the stop to be legitimate. During the stop, the officer believed the Applicant was under the influence of alcohol and preformed HGN test. Although the officer stated the Applicant did not pass this test, defense believed it could show that a number of other factors could cause a person to fail this test that was not connected to alcohol consumption. The officer also requested the applicant to perform the field sobriety test, however, the Applicant refused to perform these test due to a previous stroke. In viewing the Applicant's demeanor, speech, driving, and balance on the video, defense believed that the video evidence was inconsistent with a person with a blood alcohol level of .14% as shown in the toxicology report. Any portions of the video pertaining to the Applicant's failure to properly follow the police officers instructions were to be explained by the Applicant's previous medical history, educational background, time of night, and nervousness.

In order to advance this theory, the defense did not believe it was prudent to aggressively cross examine the

8

witness who had withdrawn the blood sample. Since the
investigation showed no legal errors in obtaining the
blood sample, a lengthy cross examination in this area
was likely only to bolster the prosecutions case. The
testimony of lab manager, Joyce Ho, and Dr. Johnson was
intended to show the technical nature of the blood test
and the many factors that could cause the results of a
blood test to be inaccurate. Each of these decisions was
fully discussed with the Applicant.

All practical avenues of presenting a defense for
the Applicant were evaluated prior to trial and discussed
with the Applicant and agreed upon prior to beginning
testimony in this case. While this strategy ultimately
proved to be unsuccessful the verdict was not the result
of a lack of investigation or indifference on the part of
defense counsel.

(*Id.* at 46-47.)

Based on counsel's affidavit and the state court records, the

state habeas court adopted the state's proposed factual findings

refuting petitioner's claims. (*Id.* at 50-53.) Specifically, the

court found that—

10. Mr. Gray fully and adequately investigated the
applicant's case.

11. Mr. Gray met with the applicant to discuss the
results of his investigation.

12. Mr. Gray concluded that, based on his investigation
and the arrest videotape, the applicant's best
defense strategy was to show that his conduct on
the videotape was not consistent with a person who
had twice the legal blood-alcohol level.

13. Mr. Gray discussed this defense strategy with the
applicant who approved its use.

9

14.  Mr. Gray acted reasonably in developing the applicant's defense strategy.

15.  Mr. Gray fully and adequately communicated with the applicant regarding his case.

. . .

18.  Mr. Gray fully discussed tactics with the applicant.

. . .

20.  Mr. Gray fully and adequately litigated the applicant's trial defense.

21.  Mr. Gray provided the applicant with adequate representation guaranteed by the Sixth Amendment.

. . .

(*Id.* at 52-53.) The court also found that given the evidence, there was no reasonable probability that the jury would have reached a different verdict or sentence with counsel other than Gray. Based on its findings, and applying *Strickland*, the court concluded that, after examining the totality of counsel's representation, counsel adequately and independently investigated petitioner's case; fully and adequately prepared for petitioner's trial, including potential defenses; exercised reasonable professional judgment in deciding which witnesses to present and what evidence to contest; and functioned as counsel guaranteed by the Sixth Amendment. (*Id.* at 50-55.) The Texas Court of Criminal Appeals in turn adopted the

10

trial court's findings and presumably applied the *Strickland* standard in denying petitioner's state habeas application.

Absent clear and convincing evidence in rebuttal, this court must defer to the state courts' factual findings. Applying the appropriate deference, and having independently reviewed petitioner's claim in conjunction with the state court records, the state courts' application of *Strickland* was not unreasonable. Petitioner's claims against trial counsel are conclusory, with no legal and/or evidentiary basis, and involve strategic and tactical decisions made by counsel, both of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *United States v. Green,* 882 F.2d 999, 1003 (5th Cir.1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the

11

outcome of the trial"); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (ineffective assistance claims "based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain").

Furthermore, overall, trial counsel devised a valid defense, conducted voir dire, made meritorious objections and motions during trial, effectively cross-examined state witnesses, and gave closing argument. Counsel's decision not to call petitioner to the stand to give his version of the events was a reasonable tactic given petitioner's extensive criminal history of DWI convictions. Having reviewed the entirety of the record, counsel's performance was not outside the wide range of professionally competent assistance.

For the reasons discussed herein,

The court ORDERS that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED March *17*, 2017.

JOHN McBRYDE
UNITED STATES DISTRICT JUDGE

12